UNITED STATED BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 08-12192 |
| **PHILLIP JOSEPH ADAMS** | SECTION "A" |
| DEBTOR | CHAPTER 13 |

**REASONS FOR ORDER OVERRULING OBJECTION TO PLAN CONFIRMATION**

This matter came before the Court on Toyota Motor Credit's ("Toyota") Objection to Confirmation of Debtor Phillip Joseph Adams' ("Debtor") proposed chapter 13 plan ("Plan").

**BACKGROUND**

On February 26, 2007, Debtor entered into a retail installment contract ("Contract") for the purchase of a 2007 Toyota Tundra ("Vehicle"). All rights and interest in the Contract and Vehicle were assigned to Toyota. The Contract granted Toyota a security interest in the Vehicle, which was perfected by notation on the Louisiana Certificate of Title issued on March 5, 2007. The Contract also permitted Toyota the right to recover, from Debtor, any losses resulting after the seizure and sale of the Vehicle.

On September 13, 2008, Debtor filed a petition under chapter 13 of the Bankruptcy Code. The parties do not dispute that Toyota holds a claim incurred within 910 days of the petition date and secured by a motor vehicle acquired for personal use.

Debtor filed the Plan, which surrendered the Vehicle in full satisfaction of Toyota's claim. The Plan also proposed to pay unsecured creditors 100% percent of their claims.

Prior to confirmation, Toyota filed a proof of secured claim for $35,232.61 and an Objection to Debtor's Plan. Although Debtor proposes to deliver the Vehicle to Toyota, Toyota alleges that

the value of the Vehicle is less than the amounts owed. It further avers that under the provisions of §§506 and 1325, Debtor may not surrender the Vehicle in full satisfaction of its claim but must instead provide for its potential unsecured deficiency after liquidation of the Vehicle.[1] The issue for consideration is whether under the hanging paragraph of §1325 Debtor may surrender collateral in full satisfaction of undersecured claims.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 1325(a).

## DISCUSSION

Section 1325(a) sets forth the requirements necessary for confirmation of a chapter 13 plan. Contained within its provisions is the treatment required for allowed secured claims. Section 1325(a)(5) provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if-
> (5) with respect to each allowed secured claim provided by the plan -
>     (A) the holder of such claim has accepted the plan;
>     (B)(I) the plan provides that -
>         (I) the holder of such claim retain the lien securing such claim until the earlier of -
>             (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>             (bb) discharge under section 1328; and
>         (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable bankruptcy law; and
>         (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

---

[1] Toyota obtained relief from the automatic stay on November 21, 2008, but as of the confirmation hearing had not liquidated the Vehicle.

>> (iii) if -
>>> (I) the property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>> (C) the debtor surrenders the property securing such claim to such holder

Thus, a plan may be confirmed if: 1) the secured creditor accepts the plan; 2) the debtor surrenders the property securing the claim to the creditor; or 3) the debtor provides the creditor with payments over the life of the plan equal to the present value of the secured claim.[2] The statute is unambiguous and straightforward.

Generally, an allowed secured claim is defined by §§ 501 and 506(a). Section 502 defines the claim as all amounts due on the petition date under state law. With regard to confirmation, §506(a) performs two basic functions. It directs that the collateral securing the claim be valued and then provides for the bifurcation of the claim into secured and unsecured portions based on the value of the collateral. Before the most recent amendments to the Bankruptcy Code, the practice of bifurcation ran smoothly and was well understood.[3]

The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") modified the application of §506(a) to certain claims secured by a motor vehicle. Specifically, BAPCPA added an additional paragraph to 11 U.S.C. § 1325(a), commonly referred to as the "hanging paragraph." It provides:

---

[2] *Associates Commercial v. Rash*, 520 U.S. 953, 956-57, 117 S.Ct. 1879, 1882-83, 138 L.Ed.2d 148 (1997).

[3] KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. §446.1 (2000 & Supp. 2007-1).

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic][4] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.[5]

This Court has held that when a debtor retains 910 Collateral, the hanging paragraph prevents the bifurcation of the 910 Creditor's claim. As a result, the entire debt is considered a secured claim and under the provisions of §1325(a)(5)(B) must be paid in full.[6] This case asks whether the hanging paragraph also prevents bifurcation of a 910 Creditor's claim when the 910 Collateral is surrendered pursuant to § 1325(a)(5)(C).

Equal Treatment from the Hanging Paragraph

Initially, a substantial majority of bankruptcy courts throughout the country determined that the hanging paragraph allowed debtors to surrender 910 Collateral in full satisfaction of the 910 Creditor's claim.[7] The tide changed, however, as circuit courts considered the issue and reversed

---

[4] The statute does not contain the word "period" after 910-day; however, it is presumed that this is a typographical error and not intentional.

[5] Collateral subject to the provisions of the hanging paragraph will be referred to as "910 Collateral" and creditors who possess a security interest in 910 Collateral will be referred to as "910 Creditors."

[6] *In re White*, 352 B.R. 633, 644 (Bankr. E.D.La. 2006).

[7] *See,* (First Circuit) *In re Pruitt*, –B.R.–, 2009 WL 535975 (Bankr. D.Conn. 2009); (Second Circuit) *In re Tompkins,* 391 B.R. 560 (Bankr. S.D.N.Y. 2008); *In re Pinti*, 363 B.R. 369 (Bankr. S.D.N.Y. 2007); (Third Circuit) *In re Price*, 366 B.R. 389 (Bankr. M.D. Pa. 2007); (Fourth Circuit) *In re Williams*, 2007 WL 2122131 (Bankr. E.D.Va. 2007); *In re Kenny*, 2007 WL 1412921 (Bankr. E.D. Va.), *rev'd sub nom. Tidewater Fin. Co. v. Kenney*, 531 F.3d 312 (4th Cir. 2008); *Daimlerchrysler Fin. Serv. Am., L.L.C. v. Waters*, 2007 WL 2107428 (W.D.Va. 2007); (Sixth Circuit) *In re Gentry*, 2006 WL 3392947 (Bankr. E.D.Tenn. 2006); *In re Payne*, 347 B.R. 278 (Bankr. S.D.Ohio 2006); *In re Evans,* 349 B.R. 498 (Bankr. E.D.MI. 2006); *In re Sparks*, 346 B.R. 767 (Bankr. S.D.Ohio 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D.Tenn.

this interpretation.[8] To date, the Fifth Circuit has not ruled on the issue and the bankruptcy courts in the circuit are divided on the question.[9]

In *In re White*, this Court carefully analyzed the hanging paragraph and its effect on the treatment of 910 Creditor claims.[10] As this Court explained:

> After much research and thought, this Court concludes that the exclusion of § 506 is simply, and only, for purpose of determining if the plan, as proposed, satisfies the requirements of § 1325(a)(5) as to the claim. In other words, the effect of § 506's exclusion is not complete but serves to eliminate only those provisions that might affect confirmation and the required treatment of the creditor's claim. Thus, it is designed to disassociate both the rights granted and limitations imposed by § 506 on

---

2006); *In re Bayless*, 2006 WL 2982101 (Bankr. E.D.Tenn. 2006); *In re Steakley*, 360 B.R. 769 (Bankr. E.D.Tenn. 2007); (Seventh Circuit) *In re Turkowitch,*, 355 B.R. 120 (Bankr. E.D.Wis. 2006); *In re Feddersen*, 355 B.R. 738 (Bankr. S.D.Ill. 2006); *In re Roth*, 2007 WL 1385383 (Bankr. N.D.Ind. 2007); (Eighth Circuit) *In re Maggett*, 2006 WL 3478991 (Bankr. D.Neb. 2006); *In re Osborn*, 348 B.R. 500 (Bankr. W.D.Mo. 2006), *aff'd,* 363 B.R. 72 (B.A.P. 8th Cir. 2007), *rev'd sub nom. Capital One Auto Fin. v. Osborn*, 515 F.3d 817 (8th Cir. 2008); *In re Nicely*, 349 B.R. 600 (Bankr. W.D.Mo. 2006); *In re Stevens*, 368 B.R. 5 (Bankr. D.Neb. 2007); (Ninth Circuit) *In re Pool*, 351 B.R. 747 (Bankr. D.Or. 2006); (Tenth Circuit) *In re Quick*, 360 B.R. 722 (Bankr. D.Okla. 2007), *aff'd,* 371 B.R. 459 (B.A.P. 10th Cir. 2007), *rev'd sub nom. In re Ballard*, 526 F.3d 634 (10th Cir. 2008); *In re Durham*, 361 B.R. 206 (Bankr. D.Utah 2006);(Eleventh Circuit) *In re Carter*, 2008 WL 410275 (M.D.Ga. 2008); *In re Moon*, 359 B.R. 329 (Bankr. N.D.Ala. 2007), *vacated and remanded,* 2008 WL 4831458 (N.D.Ala. 2008); *In re Barrett*, 2007 WL 2081702 (Bankr. M.D.Ala. 2007), *vacated and remanded*, 543 F.3d 1239 (11th Cir. 2007); *In re Bivins*, 2007 WL 624385 (Bankr. M.D.Ga. 2007); *In re Vanduyn*, 374 B.R. 896 (Bankr. M.D.Fla. 2007); *In re Brown*, 346 B.R. 868 (Bankr. N.D.Fla. 2006).

[8] *See, In re Barrett*, 543 F.3d 1239 (11th Cir. 2008); *In re Ballard*, 526 F.3d 634 (10th Cir. 2008); *Capital One Auto Fin. v. Osborn*, 515 F.3d 817 (8th Cir. 2008); *In re Long*, 519 F.3d 288 (6th Cir. 2008); *Tidewater Fin. Co. v. Kenney*, 531 F.3d 312 (4th Cir. 2008); *In re Wright*, 492 F.3d 829 (7th Cir. 2007); and *In re Rodriguez,* 375 B.R. 535 (B.A.P. 9th Cir. 2007). The First, Second, Third, and Fifth Circuits have not ruled on the issue.

[9] *See, In re Miller*, No. 07-20542, (W.D. La. Feb. 26, 2008) *appeal docketed*, No. 08-30601 (5th Cir. June 23, 2008)( surrender of 910 Collateral satisfies the entire claim). *cf: In re Horrobin*, 391 B.R. 573 (Bankr. M.D.La. 2008); *In re Dale*, 2008 WL 4287058 (S.D.Tex. 2008); and *In re Clark*, 363 B.R. 492 (Bankr. N.D.Miss. 2007)(surrender of 910 Collateral does not satisfy the entire claim).

[10] 352 B.R. 633 (Bankr. E.D.La. 2006).

secured claims *vis a vis* the confirmation process in chapter 13. What follows from this reasoning is that a qualifying purchase money security interest claim is not limited to the value of the collateral securing the debt; nor is it allowed post petition interest or other charges which may accrue on the claim, regardless of the existence of equity. Instead, the treatment of the purchase money security interest is entirely dependant upon the rights provided in § 1325(a)(5).[11]

*White* considered the effect of the hanging paragraph on a debtor who retained 910 Collateral under §1325(a)(5)(B). No portion of the Code, however, indicates that Congress intended to limit the hanging paragraph's application to that section alone. This Court's analysis applies with equal force to plans that surrender 910 Vehicles through § 1325(a)(5)(C). The hanging paragraph, in effect, provides a 910 Creditor with a secured claim, up to the value of that claim. If a debtor intends to retain the collateral, the creditor is entitled to full payment, regardless of the value of the collateral. If, however, the debtor surrenders the collateral, the entire claim is satisfied. Once the hanging paragraph eliminates § 506, the claim and collateral become indivisible.

Circuit Decisions

*In re Wright*[12] was the first circuit court to consider whether a debtor could surrender 910 Collateral in full satisfaction of a 910 Creditor's claim when the 910 Collateral was worth less than the balance due on the claim. *Wright* acknowledged that the hanging paragraph eliminated the applicability of § 506 to 910 Creditor claims. But the *Wright* court reasoned that § 506 was not the exclusive means by which a creditor could collect on a deficiency after selling its collateral.[13]

---

[11] 352 B.R. at 644 (Bankr. E.D.La. 2006). Circuit decisions in accord with this ruling include: *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447 (6th Cir. 2009); *In re Jones*, 530 F.3d 1284 (10th Cir. 2008); *In re Graupner*, 537 F.3d 1295 (11th Cir. 2008); see also *In re Trejos* 374 B.R. 210 (B.A.P. 9th Cir. 2007).

[12] 492 F.3d 829 (7th Cir. 2007).

[13] *Id.* at 832.

Relying upon *Butner v. United States*,[14] the court held "that state law determines rights and obligations when the Code does not supply a federal rule."[15]

The *Wright* court then looked to the underlying contract, which provided that the borrower was responsible for any deficiency resulting from the seizure and sale of the collateral. As a result, the court held that the debtor was liable for the deficiency. Aside from the Sixth Circuit, every other circuit to consider the issue has adopted *Wright's* reasoning and holding.[16]

The Sixth Circuit, in *In re Long*,[17] took a different path on its way to the same holding. The *Long* court recognized that a "claim cannot be an 'allowed secured claim' for purposes of § 1325(a)(5) without first coming through the § 506 gateway."[18] It also admitted that a *literal application of the hanging paragraph would allow debtors to surrender a 910 vehicle in full satisfaction of the debt.*[19] Despite this admittedly clear result, the Sixth Circuit refused to apply the law as written, holding that it would lead to "unintended and illogical" results.[20] To avoid this consequence, the court applied the common law principle of "the equity of the statute" to maintain

---

[14] 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

[15] *In re Wright*, 492 F.3d at 832.

[16] *See, In re Barrett*, 543 F.3d 1239 (11th Cir. 2008); *In re Ballard*, 526 F.3d 634 (10th Cir. 2008); *Capital One Auto Fin. v. Osborn*, 515 F.3d 817 (8th Cir. 2008); *Tidewater Fin. Co. v. Kenney*, 531 F.3d 312 (4th Cir. 2008); *In re Wright*, 492 F.3d 829 (7th Cir. 2007); and *In re Rodriguez,* 375 B.R. 535 (B.A.P. 9th Cir. 2007).

[17] 519 F.3d 288 (6th Cir. 2008).

[18] *Id* at 293.

[19] *Id.* at 294 - 95.

[20] *Id.* at 297.

the pre-BAPCPA treatment for surrendered vehicle claims.[21]

The Court respectfully disagrees with both of the above interpretations regarding the hanging paragraph.

*Wright* and its progeny rely on a perceived vacuum in federal law regarding the treatment of a 910 Creditor's claim. They argue that the vacuum can only be filled by reference to state law. *Wright* relies upon *Butner* to achieve this result, however its reliance expands *Butner* well beyond its actual ruling.

In *Butner*, the Supreme Court held that property interests are created and defined by state law. Under the Bankruptcy Code, the validity and extent of a security interest in property of the estate is controlled by state law unless some other federal interest requires a different result.[22] *Butner* did not address a creditor's contractual or state granted collection rights *vis a vis* the Bankruptcy Code. Thus, there is an important distinction that must be made between the validity of a security interest under state law, and the right under bankruptcy law to receive payment on a claim arising from that security interest.

The right to a deficiency is not properly characterized as a matter of contract. Deficiencies are only allowed based on state law collection procedures. Thus, whether or not a contract provides for a deficiency after liquidation of the creditor's collateral, a deficiency cannot be asserted unless the creditor follows state law collection procedures in the liquidation process.

---

[21] The equity of the statute principle applies when the application of a recently amended statute "would not serve the policy or purpose of the amendment." The perceived problem is then remedied by employing the law that existed before the statute was amended. *Id.* at 298.

[22] 440 U.S. at 55.

The Fifth Circuit's decision in *Matter of West Texas Marketing Corp.*[23] is instructive on this point. There, the court considered whether state or federal law determines a debtor's right to claim a tax-deduction for post-petition interest paid on undisputed and resolved general unsecured claims. The court explained:

> What claims of creditors are valid and subsisting obligations against the bankrupt *at the time a petition in bankruptcy is filed*, is a question which, in the absence of overruling federal law, is to be determined by reference to state law. Thus, the validity of any interest that may have accrued prior to the filing of the petition is resolved generally by state law. But once the petition is filed, federal law controls.[24]

The Supreme Court case of *Vanston Bondholders Protective Comm. v. Green*,[25] relied upon by *West Texas,* adds greater clarification to this issue. *Vanston* considered whether a creditor may collect post-petition interest on interest, which was prohibited under New York law. The court held that federal law determined when interest may be charged on claims against a bankruptcy estate. It noted, "[i]n determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits."[26] Unless the Code specifically defers to state law, federal law determines how a claim against an estate will be administered. This

---

[23] 54 F.3d 1194 (5th Cir. 1995).

[24] 54 F.3d at 1196 (internal citations omitted, emphasis in original), *quoting Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). Similarly, this Court has noted that "[s]tate law may control the requirements for creating and perfecting a lien, but it is the purview of the Bankruptcy Code to both recognize the lien and provide for its treatment." *In re White*, 352 B.R. at 653.

[25] *Supra.*

[26] 329 U.S. at 162, 67 S.Ct. at 240. Congress legislatively overruled a creditor's right to interest on interest under the Bankruptcy Code with the enactment of the 1994 amendments. However, *Vanston* still stands for the principle that federal law, not state law, controls the allowance, priority and rights to distribution on a claim. *See, Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 127 S.Ct.1199, 167 L.Ed.2d 178 (2007).

reasoning is also supported by reference to other sections of the Code.

When Congress intends for a party's contractual or state rights to control the treatment of a claim, it expressly so provides.[27] For example, section 506(b) provides that "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement or State statute under which such claim arose." Similarly, under § 1322(e), "if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Section 1325 contains no provision that would require the court to enforce state law.

Under Supreme Court and Fifth Circuit precedent, state law controls questions regarding the validity of the claim or security interest. The Bankruptcy Code, however, determines whether a claim is allowable, entitled to distribution, and in what measure or priority. *Wright's* analysis fails because it relies upon state law to determine whether a claim is allowable and entitled to distribution; directly contradicting *Vanston*.

To support its holding, *Wright* points out that it would be unfair to allow an unsecured deficiency claim for a creditor who receives a surrendered car the day before the petition date but deny an unsecured claim to a creditor who receives a surrendered car after the petition date.[28] With all due respect to this statement, there are any number of potentially "unfair" lines that are drawn throughout the Bankruptcy Code. For example, barring any applicable defenses, a creditor who

---

[27] *See* this Court's *Vanston* discussion, *supra* pg. 9. This Court is also guided by the rule that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

[28] *In re Wright*, 492 F.3d at 832.

receives a preferential payment 90 days before the petition date would have to return that payment to the estate, whereas a creditor receiving the same payment 91 days before the petition date could retain its payment.[29] Similarly, the lender on a vehicle purchased 910 days before the petition date may receive full payment if the debtor elects to keep the vehicle while the lender on a vehicle purchased 911 days before a bankruptcy is filed would not.[30] Creditors that supply goods to a debtor twenty days prior to the filing must be paid in full while those delivering goods twenty-one days before are relegated to unsecured status.[31] The Bankruptcy Code is replete with these distinctions, yet all are routinely enforced.[32] This Court can find no reason to write into the law a distinction for 910 Creditors on surrender based on the "unfairness" of the result.

This Court also disagrees with the reasoning employed in the *Long* case. While the *Long* court acknowledged that a plain reading of §1325(a)(5) would require the satisfaction of a 910 Creditor's claim on the surrender of the 910 Collateral, it ignored an elementary rule of statutory construction requiring it to uphold the statute as written.[33] Instead the Sixth Circuit argued that to enforce the statute as written would result in "unintended and illogical" consequence. This Court finds quite the opposite.

---

[29] 11 U.S.C. § 547(b)(4)(A).

[30] See the hanging paragraph under 11 U.S.C. § 1325(a).

[31] 11 U.S.C. § 503(b)(9).

[32] See also, *In re White* 352 B.R. at 643, n.23 (providing additional examples of disparate treatment under the Code such as consensual liens secured by a debtor's personal residence that may not be modified or liens against property subject to an exemption that may be stripped).

[33] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947 (2000)("when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd-is to enforce it according to its terms.")(internal quotations omitted).

The Bankruptcy Code is a comprehensive and interrelated scheme for the administration of a debtor's assets and the satisfaction of the claims against him. The method, amount, and priority of distribution is entirely a function of bankruptcy law. Nothing in the Code cedes this to state law. In fact, Bankruptcy law regularly reorders the priority of payment, the amounts that may be paid and the rights of creditors post-petition.[34]

Congress enacted a provision to specifically address the treatment of 910 Creditor claims. That provision is complete and unambiguous. It states that *the secured claim* must receive one of the following treatments in a plan in order for the plan to be confirmed:

1. The creditor accepts the plan;
2. The claim is paid in full . . ;or
3. The collateral is surrendered.

None of the circuit courts deny that for purposes of retention, the hanging paragraph *defines the secured claim as the entire debt owed as of the petition date*.[35] Yet they fail to explain why for purposes of surrender, the secured claim is something different. Nothing in the statute indicates any intention for a divergence in treatment based on the retention or surrender of the collateral. Further, nothing supports the argument that Congress' intent was anything different from what a plain reading of the statute would require.[36]

---

[34] *In re White*, 352 B.R. at 643.

[35] *See* note 11, *supra*. The Sixth, Ninth, Tenth, and Eleventh Circuits all agree that, for purposes of § 1325(a)(5)(B), the Code requires full payment of the entire claim.

[36] *See, In re Pinti*, 363 B.R. 369, 385-86 (Bankr. S.D.N.Y. 2007)(finding that legislative history provided no evidence that Congress did not intend for the hanging paragraph to apply equally to 1325(a)(5)(B) and (C)). Even if it were necessary to refer to the scant legislative history, it would be of little guidance to this Court. In fact, the courts that have relied upon the legislative history for guidance have based their analysis on the section title of Pub Law 109-8, section 306, 119 Stat. 80, which enacted the hanging paragraph. That section is titled "Restoring the Foundation for Secured Credit." *See e.g., In re Zehrung*, 351 B.R. 675, 678 (Bankr.

"If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive."[37] However, "where the language is unambiguous, silence in legislative history cannot be controlling."[38] Furthermore, Congress is assumed to know and understand the effect of its legislation, and courts may not rewrite the statute as enacted by Congress.[39]

If Congress had intended to limit the application of the hanging paragraph to only when the collateral is retained, it would have been easy for the hanging paragraph to state: "[f]or purposes of paragraph (5)(B), section 506 . . .." Because the statute was not limited in such a way, this Court is compelled to give meaning to the fact that § 1325(a)(5)(C) falls under the umbrella of hanging paragraph. Courts have argued that it would be simple for Congress to specify that it intended to allow full satisfaction of the claim on the surrender of 910 vehicle.[40] This Court believes Congress did require that the plan provide for treatment of the allowed claim, the creditor's entire debt, through full payment *or* surrender of the vehicle.[41]

---

W.D.Wis. 2006).

[37] *In re Eubanks*, 219 B.R. 468, 473 (B.A.P. 6th Cir. 1998)(internal punctuation omitted), *quoting Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993).

[38] *In re Eubanks*, 219 B.R. at 479, *quoting Dewsnup v. Timm*, 502 U.S. 410, 419-20, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992).

[39] *In re Payne*, 347 B.R. at 283 (Bankr. S.D.Ohio 2006).

[40] *See In re Duke*, 345 B.R. 806, 809 (Bankr. W.D.Ky. 2006).

[41] *Wright* noted that "state law determines rights and obligations when the Code does not supply a federal rule." 492 F.3d at 832. What *Wright* fails to recognize is that the hanging paragraph *is* the federal rule that Congress has supplied.

The full satisfaction of a claim through the surrender of 910 Collateral is both logical and consistent with the treatment afforded a 910 Creditor on retention of its collateral. As noted above, prior to *Wright,* the vast majority of bankruptcy courts agreed with this interpretation. It is unlikely that such a large number of bankruptcy specialists would come to the same conclusion if their rulings truly led to an illogical result. Therefore with regret, this Court respectfully disagrees with the admittedly pervasive circuit court authority and holds that a debtor's surrender of 910 Collateral may be in full satisfaction of a 910 Creditor's claims.

For the above reasons, this Court holds that the Debtor may surrender collateral subject to the hanging paragraph in full satisfaction of Toyota's claim. An Order consistent with these reasons will be rendered.

New Orleans, Louisiana, March 13, 2009.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge